UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:05CV1598 CDP |
| ANHEUSER-BUSCH, INC., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Equal Employment Opportunity Commission and plaintiff-intervenor Frank Cooper claim that Cooper was fired from his job with defendant Anheuser-Busch, Inc. in retaliation for his filing a discrimination lawsuit against A-B. A-B has now moved for summary judgment, arguing that Cooper cannot meet his burden of establishing a prima facie case of retaliation and that plaintiffs cannot establish that its reasons for Cooper's termination were pretextual. I agree that there is no evidence of pretext, and so I will grant A-B's motion for summary judgment.

## Factual Background

Frank Cooper was employed as a laborer performing cleaning-related duties in the Utilities Department at A-B's St. Louis Brewery. Cooper filed a *pro se*

lawsuit, alleging employment discrimination at A-B, and that suit was served on A-B on February 20, 2007. Cooper did not inform any supervisors or management that he had filed this lawsuit. Senior Human Resources Manager Dave Mulherin did receive notice of the suit from A-B's legal department. Mulherin directed Cheryl Adler to create a file folder for the lawsuit and did not speak to anyone other than A-B's legal department about receiving the notice of the lawsuit.

Bob Johnson and James Arno were two of Coopers' supervisors in the Utilities Department at A-B. Employees of the Utilities department are subject to the St. Louis Brewery Plant Rules and Regulations, which describe offenses that subject employees to disciplinary action. Plant Rule 12 refers to "inattention to duties; carelessness in performance of duties; loafing, idling, sleeping or reading papers during the working hours." Plant Rule 14 speaks to "absence from duty without prior permission from, or notice to, the Supervisor." Plant Rule 16 concerns "leaving employee's regular working place or leaving the department during working hours without authorization from the Supervisor."

Under A-B's disciplinary policy, supervisors issue reports for any rule violations. After the incident report is issued, the supervisor discusses the report with the employee and his or her union representative. The report, plus the employee's response, is then submitted to the Human Resources Department. A

Human Resources representative and the head of the employee's department then discuss the incident report and jointly make the decision regarding the employee's discipline.

Cooper had been disciplined six times in the in the five years before he filed his first lawsuit. Five of those incidents resulted in suspensions. The suspensions were, in date order, seven days, one week, two days, four weeks, and six weeks. The most recent suspension of six weeks resulted from an incident that occurred in December of 2002. There were no disciplinary incidents in 2003.

On January 29, 2004, Cooper was disciplined for sleeping during a training class. His falling asleep was considered disruptive to the training session and was a violation of Rule 12. In February 2004, Cooper was again involved in a number of incidents for which he was written up. These incidents include: (1) Arno seeing Cooper out of his work area in the hallway of the second floor in the morning of February 24, (2) Arno seeing Cooper out of his work area in the Electrical Shop of the Utilities Area later that day, (3) Arno observing Cooper out of his work area in the Pipe show still later that day, (4) Johnson observing Cooper in the break room outside of work area without permission on February 25, (5) Johnson finding Cooper outside his work area in the second floor hall of Building 225 on later February 25, (6) Johnson observing Cooper outside his work area in the Smoking

Room of Building 225 still later on February 25, and (7) Johnson observing Cooper coming back from the building that houses the cafeteria before the start of his lunch period on February 26. Arno and Johnson did not write any of the incident reports that detail Cooper's February violations until after they had observed all of them. There is no evidence that either Arno or Johnson knew that Cooper had filed his discrimination lawsuit at the time that they decided to document these incidents in incident reports.

While Cooper disputes that some of these incidents occurred or that he was out of his work area in any of the incidents, he does not dispute that he reviewed the incident reports with Sue Simmons, the Resident Engineer and area manager for the Utilities Department at the St. Louis Brewery and the person with overall responsibility for the employees in the Utilities Department. Simmons discussed the incident reports with Cooper and his union representative, Vince Eschbacher. Additionally, Linda Wilson, the Assistant Manager of Human Resources at the St. Louis Brewery, received the incident reports. Wilson reviewed the incident reports as well as Cooper's written comments related to the incident reports. Wilson spoke to the trainers and supervisors who observed Cooper's behavior and issued the incident reports. Although Wilson does not recall speaking to Sue Simmons at this time, Simmons testified that she and Wilson discussed the

decision to terminate Cooper. Wilson also spoke with her supervisor, Mulherin. A decision was made to terminate Cooper. There is no evidence that either Wilson or Simmons were aware of Cooper's lawsuit at the time of his termination.

Within the year before Cooper's termination, other A-B employees had engaged in similar rule violations. On September 9, 2003, Stephanie Nurdin was charged with violating Plant Rule 12 because she had been observed at the southeast entrance of the brewhouse talking to another employee. She later was given a Notice of Violation by Johnson for being out of her work area without authorization with a proposed discipline of a one day suspension, which was crossed out and replaced with a proposed discipline of a notice of reprimand. This is the only discipline in Nurdin's Personnel File, and she had never been suspended.

On February 25, 2004, during one of the incidents for which Cooper was disciplined, he was observed talking to Eschbacher in the break room. At that time, Eschbacher was outside of his work area, but was not written up or disciplined for talking to Cooper. Eschbacher had previously received written discipline three times but had never been suspended.

Also on February 25, 2004, during a different incident for which Cooper was disciplined, he was observed talking to David Bradshaw who was in the

smoking area of the break room. In Johnson's incident report documenting this behavior, he indicates that Bradshaw was doing his job. Bradshaw was not written up for talking to Cooper. Bradshaw had received written discipline one time for attendance problems and had never been suspended.

## Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

Plaintiffs' retaliation claims can be analyzed using the framework of burden

shifting originally developed in McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1973). Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1119 (8th Cir. 2006). Under this framework, plaintiffs must first establish a *prima facie* case of retaliation by adducing proof that: (1) Cooper took part in protected conduct; (2) he was subjected to an adverse employment action; and (3) there exists a casual nexus between the protected conduct and the adverse action. Id. (citing Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 632 (8th Cir. 2005)). "A minimal evidentiary showing will satisfy this burden of production." Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850 (8th Cir. 2005) (quoting Pope v. ESA Serv., Inc., 406 F.3d 1001, 1007 (8th Cir. 2005)). If the prima facie case is met, the burden shifts to the defendant to produce "a legitimate, non-retaliatory reason for the action it took against the plaintiff." EEOC v. Kohler Co., 335 F.3d 766, 772 (8th Cir. 2003). If the defendant satisfies its burden, the plaintiffs must then "present evidence that (1) creates a question of fact as to whether [the defendant's] reason was pretextual and (2) creates a reasonable inference that [the defendant] acted in retaliation." Smith v. Allen Health Sys., 302 F.3d 827, 833 (8th Cir. 2002).

There is no question in this case that plaintiffs can present evidence of the first two elements of a retaliation claim; Cooper filed a discrimination lawsuit in federal court and was subsequently terminated. A-B argues that plaintiffs cannot

establish the required causal connection because the two decision-makers were unaware of Cooper's lawsuit. Cooper argues that a jury may infer that these two decision-makers knew of his suit, and also argues that a third person, Mulherin, who did know of the lawsuit, also qualifies as a decision-maker.

For a causal connection to exist, the A-B decision makers must have known of the statutorily protected activity before they terminated Cooper. Smith v. Riceland Foods, Inc., 151 F.3d 813, 818 (8th Cir. 1998) (citing Simon v. Simmons Foods, Inc., 49 F.3d 386, 389 (8th Cir. 1995) (stating that a plaintiff must show that "the employer had actual or constructive knowledge of the protected conduct" in order to establish a prima facie case of retaliation)). Although a causal connection may be inferred when there is close temporal proximity between the protected activity and an adverse employment action, there still must be evidence that the decision-maker knew of the protected activity. See Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (noting a causal connection will only be inferred in cases where there is a very close temporal proximity between the employer's knowledge of the protected activity and an adverse employment action).

A-B argues that it is entitled to summary judgment because there is no evidence that Wilson and Simmons knew of Cooper's lawsuit at the time that they

decided to discharge him. While I agree that there is no evidence that Wilson or Simmons knew of Cooper's lawsuit, I will not grant summary judgment on this basis because there appears to be a question of fact as to whether Mulherin was also a decision-maker.

Mulherin knew of Cooper's lawsuit at the time that Cooper was terminated. Additionally, Mulherin was Wilson's supervisor and Wilson had to comply with his wishes. Mulherin reviewed Wilson's decision to terminate Cooper. Although Mulherin's testified that he did not exercise a discretionary role in Cooper's termination, his involvement may be enough to establish a causal connection.

Even if I assume that plaintiffs could meet their initial burden, A-B has also met its burden of producing a legitimate, non-discriminatory reason for its termination of Cooper: Wilson and Simmons' review of the incident reports from January and February of 2004 in combination with Cooper's previous disciplinary history. According to their testimony, the 2004 incidents, coupled with his previous history, demonstrated that progressive discipline was not effective with Cooper, and so they decided that the proper course of action was to discharge him. This is a legitimate, non-discriminatory reason for the termination. Therefore, the burden shifts back to plaintiffs to establish: (1) that A-B's reason was merely pretextual and (2) a reasonable inference that A-B acted in retaliation. Plaintiffs

attempt to establish pretext in two ways: by challenging the legitimacy of the incident reports and by pointing this Court to the discipline of other A-B employees, Nurdin, Eschbacher, and Bradshaw.

Although Cooper disputes that he engaged in the behavior that led to the incident reports or that his behavior violated the rules, these denials are immaterial. Wheeler v. Aventis Pharmaceuticals, 360 F.3d 853, 859 (8th Cir. 2004). Cooper has not presented any evidence to support an inference that Johnson and Arno documented his behavior in the incident reports out of retaliation for the filing of his discrimination lawsuit. The undisputed evidence shows that Johnson or Arno were not aware of the filing of Cooper's lawsuit at that time. The relevant inquiry is not whether Cooper had actually violated the rules as documented by Johnson and Arno, but rather whether Wilson and Simmons, and possibly Mulherin, believed him to have violated the rules, and if so, whether this belief was the reason behind Cooper's discharge. Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 n. 2 (8th Cir. 1994) (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).

Cooper's complaint that other employees were disciplined less severely or not at all for the same or similar violations bears a closer examination. An employee may establish that an employer's stated reason for an adverse

employment action is a pretext by showing that the employer gave more lenient treatment to other employees who did not engage in protected activity. Kohler, 335 F.3d at 774. Plaintiffs must demonstrate that Cooper and the other employees, Nurdin, Eschbacher, and Bradshaw, were "similarly situated in all relevant respects." Harvey, 38 F.3d at 972 (internal citation omitted). Specifically, plaintiffs must demonstrate that the employees "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003) (citing Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000)). At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one. Rodgers, 417 F.3d at 853.

Before the events of January and February 2004, Cooper had been disciplined on at least six occasions and had been suspended five times. In January and February 2004, his supervisors observed at least seven incidents of what they believed to be violations of the Rules before they submitted incident reports on Cooper. Wilson and Simmons considered both Cooper's disciplinary history from the past five years as well as the incidents in January and February 2004 in determining the appropriate discipline for him.

The facts before me with regard to the known circumstances involving

Cooper are very different from those involving Nurdin, Eschbacher, and Bradshaw.  The records presented on summary judgment show that none of those employees had this many rule violations, and none of them had ever been suspended.  Cooper's file reflects just the type of progressive discipline that the A-B witnesses testified they used:  several relatively short suspensions were followed by a four-week suspension, which was followed by a six-week suspension, which was followed by termination after more similar rule violations.  These other employees were not similarly situated to Cooper.

## **Conclusion**

A-B is entitled to summary judgment because the undisputed facts show that plaintiffs cannot meet their burden of showing pretext.  While there may be a factual dispute about whether a decision maker was aware of Cooper's discrimination lawsuit at the time the decision was made to discharge him, A-B has presented undisputed evidence to establish a legitimate non-discriminatory reason for Cooper's discharge.  Plaintiffs have not presented any evidence that could show this reason to be a pretext, and therefore, A-B is entitled to judgment as a matter of law.

Accordingly

**IT IS HEREBY ORDERED** that defendant Anheuser-Busch, Inc.'s motion

for summary judgment [#32] is granted.

A separate Judgment in accordance with this Memorandum and Order will be issued this same day.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 31st day of August, 2007.